FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 NOV -1  A 8: 53

LORETTA G. WHYTE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MARY JANE MORSE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 03-2638** |
| **BANK ONE, ET AL.** | **SECTION "K" (1)** |

## ORDER AND REASONS

Before the Court is defendants' Motion For Summary Judgment Or Alternatively Partial Summary Judgment (Rec. Doc. 70). After reviewing the record, memoranda, relevant law, and having heard oral argument on August 24, 2005, **IT IS HEREBY ORDERED** that defendant's Motion To Dismiss and Incorporated Memorandum is **DENIED** in part and **GRANTED** in part.

### I.   Factual Background

Plaintiff Mary Jane Morse is the settlor and sole income beneficiary of the Mary Jane Wheaton Morse Charitable Remainder Annuity Trust. In July 1995, plaintiff's husband died leaving her as a large shareholder of Fargo Manufacturing Company. Fargo was eventually bought by a publicly traded company, Hubbell Incorporated, and plaintiff acquired a significant amount of Hubbell stock as a result. In 1997, after consulting with First National Bank of Commerce ("FNBC") Private Financial Services group, plaintiff was introduced to the FNBC trust division. During August of 1997, she created a Charitable Remainder Annuity Trust

Fee_____
Process_____
X Dktd_____
✓ CtRmDep_____
Doc. No._____

("CRAT"), with FNBC serving as sole trustee. Plaintiff's own representatives drafted the trust instrument, and the trust was funded with $1.5 million in Hubbell, Inc. stock. With the Trust plaintiff was able to sell her Hubbell stock within the Trust and diversify her holdings without paying capital gains tax. Consequently her contribution to the tax-exempt Trust enabled her to take a significant and immediate income tax deduction. As structured the Trust was to pay plaintiff, as income beneficiary, an annuity of 12 % (approximately $180,000) per year for a term of 10 years. After the ten-year period ended, the trust corpus was to be distributed to three charitable organizations equally as principal beneficiaries. The charities were Phillips Academy, Duke University, and Vassar Brothers Hospital Foundation.

Eventually FNBC was acquired by Bank One Trust Company, N.A., and Bank One Trust became the successor in interest to FNBC's fiduciary and trustee duties[1]. Bank One Trust sent plaintiff quarterly account statements which provided an itemized list of transactions occurring during the previous quarter and a list of all assets maintained in the Trust account. Bank One Trust also provided the charitable beneficiaries with annual account statements which contained similar information.

On or about January 28, 2003 representatives from Bank One Securities Group and Bank One Trust informed plaintiff's son that it was highly likely the ten year trust instrument would fail after approximately seven and a half years (2005) due to poor investment performance, and that as a result the income stream to plaintiff would cease and the charities would receive

---

[1] With the acquisition, Bank One Trust Company, N.A. became successor in interest to FNBC in its capacity as Trustee while Bank One, N.A. became successor in interest to FNBC. Bank One was eventually acquired as well, and defendant JP Morgan Chase Bank, N.A. is sued as successor in interest to Bank One, N.A.

nothing. *See* Rec. Doc. 15, Sec. Am. Compl. para. 24. In March, 2003 Bank One wrote a letter directly to plaintiff stating that the Trust was likely to fail after 7 ½ years and indicating other investment alternatives should be considered.

On September 19, 2003 plaintiff filed suit against defendants, alleging that the failure to perform is the result of Bank One's failure in carrying out its duties as Trustee. On November 4, 2003, defendants filed a Motion To Require Joinder of the Principal Beneficiaries, namely Philips Academy, Duke University and Vassar Brothers Hospital Foundation. The Court granted the motion and ordered plaintiff to join the Principal Beneficiaries as nominal plaintiffs. Despite being named in plaintiff's amended complaint, two of the three charities, Vassar Brothers and Phillips Academy, never filed an answer. Duke did on March 2, 2004. On December 21, 2004, after issuance of a May 20, 2004 Call Docket Notice, the Court dismissed Vassar Brothers and Phillips Academy from the lawsuit, with prejudice. At that time, and with their consent, the Court also dismissed Duke University, with prejudice, from the case.

On May 13, 2005, plaintiff filed her Second Amended Complaint which alleged negligent misrepresentation, detrimental reliance, breach of trust, breach of fiduciary duty, and breach of contract. Defendants now urge the Court to grant summary judgment on the entire suit because plaintiff has failed to state with sufficient particularity what defendants did that constitutes a breach of trust, fiduciary duty, or contract. Defendants argue that plaintiff cannot demonstrate a causal link between any alleged breach and damages, and that she is unable to show any representation made by defendants to form the basis of her negligent misrepresentation and detrimental reliance claims. Defendants also contend that the Court should order partial summary judgment on the issue of peremption, specifically that plaintiff's claims are barred to

the extent they involve actions by defendants prior to September, 2001, and finally, that the Court should enter an order limiting Plaintiff's damages to her lost annuity payments only, and not for any damages to the Trust or to the charities.

## II.   Summary Judgment Standard

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the burden shifts to the non-movant "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. "[M]ere allegations" will not defeat a well-supported motion for summary judgment. Fed. R. Civ. P. 56(e). Rather, the non-movant must come forward with "specific facts" that establish an issue for trial. *Id.*

When deciding a motion for summary judgment, the Court must avoid a "trial on

affidavits" as "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are tasks for the trier-of-fact." *Anderson*, 477 U.S. at 255. To that end, the Court must resolve disputes over material facts in the non-movant's favor. "The party opposing a motion for summary judgment, with evidence competent under Rule 56, is to be believed." *Leonard v. Dixie Well Service & Supply, Inc.*, 828 F.2d 291, 294 (5th Cir. 1987).

**III.**     **Analysis**

    A.    Plaintiff's Breach of Trust, Fiduciary Duty, Contract, and Detrimental Reliance Claims

        1.    The Parties' Positions

Defendants argue that plaintiff has not put forth specific facts regarding her claims that defendants failed to prudently administer and review the Trust. Specifically defendants contend that plaintiff fails to explain when the trust corpus began to "feel the impact of market conditions," what those market conditions were, and what defendants should have done; nor does plaintiff explain which of the Trust investments rendered the Trust "increasingly aggressive." *See* Rec. Doc. 70, Def. Mtn. for Sum. Jgmt., Exh. E-2, Pltf.'s Ans. to Interrog. #8. Defendants argue that plaintiff cannot put forth any facts to show that a breach of fiduciary duty or contract occurred, and that under Louisiana law, the standard "is not that the trustee must always have his judgment vindicated by the market." *Holladay v. Fidelity Nat'l Bank of Baton Rouge*, 312 So.2d 883, 888 (La. App. 1st Cir.1975). The mere fact that the Trust assets lost value is insufficient to prove plaintiff's claims. Furthermore, the defendants argue they made no representation upon which plaintiff relied. Plaintiff admitted in her deposition that she was not "guaranteed" any particular outcome. *See* Morse dep., Exh. C., at 112:19-113:13. Finally,

defendants argue no breach of contract can be shown, as "the Trust Instrument is not a contract that can be enforced through a breach-of-contract action." *See* Restatement (Second) of Trusts § 197 cmt. b (1959)("The trustee by accepting the trust and agreeing to perform his duties as trustee does not make a contract to perform the trust enforceable in an action at law.").

Plaintiff responds that a number of genuine issues of material fact remain, including whether defendants agreed that the fixed payments to plaintiff were to have "zero" risk and whether defendants violated their own policies and procedures by failing to identify or document her objectives and risk tolerance for the Trust. *See* Rec. Doc. 81, Plt's Opp. Mem., Exh. 2, First Commerce Corporation Trust Account Data Sheet. Plaintiff states that although the asset allocation (70% equities and 30% debt), and consequently, the risk of the Trust's equity portfolio, was configured to match the performance of the Standard & Poors 1500 (itself significantly weighted toward growth) defendants' handling of the Trust investments exceeded even that maximum allocation. Furthermore, plaintiff argues that specific reasons why defendants caused the Trust to fail are matters of expert testimony, and those depositions have yet to be taken.

Additionally plaintiff asserts that her claims of negligence, breach of fiduciary duty, and breach of trust are supported pursuant to La. R.S. 9:2127 and *U.S. v. White Mountain Apache Tribe*, 537 U.S. 465, 475-6 (2003)("Elementary trust law confirms the commonsense assumption that a fiduciary actually administering trust property may not allow it to fall into ruin on his watch. 'One of the fundamental common-law duties of a trustee is to preserve and maintain trust assets.'"). As to breach of contract, she points to several "contracts" provided by defendants: contracts by which defendants were hired, contractual commitments made by defendants;

contractual commitments to provide regular updates. *See* Rec. Doc. 81, Plt's Opp. Mem., Attached Exhibits. Importantly, when questioned in oral argument as to which specific contract plaintiff alleges to have been breached, plaintiff's counsel pointed to the "Service Agreement" document signed by FNBC Trust Officer Kimberly Austin in which FNBC pledges to update plaintiff's financial situation, review her portfolio, and ensure that her needs are being satisfactorily addressed. It is this document which forms the basis of plaintiff's breach of contract and detrimental reliance claims. *See* Rec. Doc. 81, Plt.'s Opp. Mem., Exh 10.

Alternatively, should the Court find that no contract exists, plaintiff argues her detrimental reliance claim is also supported by law because such a claim does not require an underlying contract. *See Suire v. Lafayette City-Parish Consol. Gov't*, 04-1459, 2005 WL 832362 (La. April 12, 2004). Detrimental reliance only involves (1) a representation by conduct or word; (2) justifiable reliance; (3) a change in position to one's detriment because of the reliance, *id*, elements with plaintiff alleges are all met in this case.

    2.    Holding

        a.    Breach of Fiduciary Duty

Defendants request for summary judgment on plaintiff's breach of fiduciary duty claim is denied. As to whether Bank One breached its fiduciary duty to the plaintiff, the Court finds issues of material fact remain. A fiduciary is one who has the power and obligation to act for another under circumstances which require total trust, good faith, and honesty. Characteristically the fiduciary has greater knowledge and expertise about the matters being handled; as such the best interest of the beneficiary must primary and absolute candor is required of the fiduciary at all times. In *Brown v. Schwegmann* 861 So.2d 862, 865(La.App. 4 Cir.,2003), the Court examined

a trust administrator's duty with particular reference to the Louisiana Trust Code, Revised Statutes Title 9, §§ 2081 *et seq.*, which establish the duties of a trustee. La.R.S. 9:2090 sets forth the following standard for administration of a trust:

> A. A trustee shall administer the trust as a prudent person would administer it. In satisfying this standard, the trustee shall exercise reasonable care and skill, considering the purposes, terms, distribution requirements, and other circumstances of the trust.
> B. A trustee who has special skills or expertise, or has held himself out as having special skills or expertise, has a duty to use those special skills or expertise. (La.R.S. 9:2090).

As defendants point out, according to *Holladay*, the test for trust administration is not that the trustees' judgment be vindicated by the market, but whether the trustee exercised the skill and care of a man of ordinary prudence would use in dealing with his own property. *Holladay*, 312 So.2d at 888. But here whether the Trust failure is due solely to a downturn in market conditions rather than imprudent or negligent management by the defendants is disputed. The Court finds that plaintiff's argument, namely that even in the most lean of times a well-managed CRAT should have survived, and that a trustee with the special skills of the defendants who exercised reasonable care could have ensured that the Trust would have, necessarily requires further discovery, including expert reports.

The Court also finds that plaintiffs have put forth enough evidence to raise a genuine issue of material fact as to whether defendants breached their fiduciary duty under Louisiana's Trust Code. The Code requires that defendants, as trustee, consider the "purposes, terms, distribution requirements, and other circumstances" of the Morse Trust. This is an *affirmative* duty placed on defendants as trustees governed by the Code. Under this standard, the charitable purpose of the Morse Trust should have been considered by defendants when managing the trust,

and issues of material fact remain as to what extent defendants may have considered this purpose when making their investment and management decisions.

        b.        Breach of Trust[2]

Any action, negligent or otherwise, which is in violation of the duties of a trustee or of the terms of the trust can constituted a breach of trust. In *Schwegmann*, the court held that a trustee breached his obligation to the trust because he failed to manage the risks to which he exposed trust assets. *Schwegmann*, 861 So.2d at 862. Similarly, plaintiff argues that defendants' failure to manage the risks to which trust assets were exposed have led to the Trust's demise. The Court finds that Plaintiff has alleged enough specific facts to created a genuine issue of material fact as to whether defendants failed to adequately preserve the trust property. The Court is unpersuaded by defendants' argument that because plaintiff's representatives, not defendants, drafted the trust instrument, and because plaintiff was able to take a significant income tax deduction up-front, the essential purpose of the Trust was met. The "CRAT" format allowed for multiple purposes, with the income tax deduction being only one of them, and defendants had sole control over asset allocation and management.

A trustee must, *inter alia*, "take reasonable steps to take, keep control of, and preserve the trust property," La.R.S. 9:2091, provide an annual accounting, La.Rev.Stat. 9:2088, and furnish "complete and accurate information" *whenever* a beneficiary requests information regarding the trust. La.R.S. 9:2089. (emphasis added). According to the record, it was plaintiff and her representatives who inquired about the status of the trust and who requested that her financial

---

[2]Plaintiffs allege a claim for breach of trust separately from their fiduciary duty claim, but the Court notes the arguments for each claim substantially overlap.

planning needs be updated. Notably there are no notifications from defendants other than quarterly account statements, statements which, while detailing the individual assets held by the trust, other than a declining balance, make no mention of the Trust's potential (and now inevitable) failure.

Additionally, in April 1999 plaintiff's son, Rodger Wheaton, wrote to Pam Pequet at Bank One to complain about Bank One's failure to update plaintiff's financial plan, as agreed at an earlier meeting. On April 30, 2001, Mr. Wheaton wrote to the officers of the trust department again to request an update on Plaintiff's financial plan, which he expressed as "absolutely critical" to her planning needs. Despite these concerns, no updates were performed. It was not until March 13, 2003 that plaintiff received a letter from Bank One indicating the Trust would fail. The fact that the Trust will now fail as to not only Mrs. Morse but also her charitable beneficiaries raises enough of a dispute over whether the trust agreement was breached in order to survive a motion for summary judgment. Thus the Court finds that issues of material fact as to whether defendants adequately met their applicable burdens as trustees to consider the interests of the Trust's beneficiaries, consider the charitable and income purposes of the trusts, and to keep the Trust's beneficiaries informed, remain. Also, pursuant to Rule 56(f) of the Federal Rules of Civil Procedure the Court recognizes that expert testimony on many of these issues may be necessary; therefore the Court finds additional reason to deny summary judgment at this time.

        c.      Breach of Contract, Negligent Misrepresentation, and Detrimental Reliance

The Court also finds that based upon the presentations and projections regarding the Trust that were made to plaintiff by defendants, as well as the alleged promises made by defendants in the "Service Agreement," plaintiff's claims for breach of contract, negligent misrepresentation

and detrimental reliance also present genuine issues of material fact. *See* Rec. Doc. 81, Plt's Opp. Mem., Attached Exhibits. Whether the documents, including the "Service Agreement" do indeed create a contractual relationship should be left for the finder of fact. Thus the Court denies summary judgment on plaintiff's claims.

B. Peremption

1. The Parties' Positions

Defendants aver that claims against Trustees are governed by a two-year peremptive period. 2234(A) of the Trust Code provides:

> An action for damages by a beneficiary against a trust for any act, omission, or breach of duty shall be brought within two years of the date that the trustee renders . . . an accounting for the accounting period in which the alleged act, omission, or breach of duty arising out of the matters disclosed therein occurred. La. R. S. 9 :2234(A)(2005).

Based on La. Rev. Stat. Ann. § 9:2234(C)(Supp.2005), this period is peremptive, rather than prescriptive, and thus is may not be renounced, interrupted, or suspended. Defendants argue that because plaintiff filed her complaint on September 19, 2003, she is precluded from asserting claims regarding acts or omissions that are disclosed in statements she received prior to September 19, 2001.[3]

Furthermore, defendants argue the peremptive period bars *all* of plaintiff's claims based upon actions or omissions that occurred in or before June 2001, not just her claims for breach of trust and fiduciary duty. Defendants mention *Grabert v. Iberia Parish School Board*, 638 So.2d 645 (La. 1994) which held that a breach of contract action was not governed by the normal ten

---

[3]The last accounting Plaintiff received before September 2001 was the accounting for the second quarter of 2001.

11

year prescriptive period provided by article 3499 of the Louisiana Civil Code because a separate, more specific statute governed. *Id.* By analogy, defendants argue that because plaintiff's other claims involve claims arising from an "act, omission, or breach of duty" by a *trustee*, they too are covered under section 2234; thus the two-year peremptive period should apply rather than the period provided by article 3499. Notably, claims for negligent misrepresentation have a one-year prescriptive period. La. Civ. Code art. 3492.

Plaintiff responds that although defendants rely solely upon the two-year period provided by R.S. 9:2234, they ignore the requirement that the breach of duty must arise out of matters *actually disclosed* in the accounting. It is uncontested that the accountings provided by Bank One failed to notify plaintiff that her trust was not going to survive or meet its objectives. Alternatively plaintiff also argues that La. R.S. 9:2234 does not provide the exclusive prescriptive period, because the relationship between the parties was not solely that of trustee and beneficiary. Plaintiff argues that the presentations regarding overall market performance made by defendants before the Trust was ever created provide adequate support for her claims of negligence and negligent misrepresentation.

    2.    Holding

Based upon the Court's reading of La. R.S. 9:2235, the Court finds that the two-year peremptive period is inapplicable because defendants' breach of duty was neither reflected in their accountings nor susceptible of being detected by a person having plaintiff's experience, education, and ability. These "accountings" did not *disclose* to the average reasonable person that the Trust was being mismanaged nor that it would fail. The Court finds that the notification

necessary to trigger the peremptive period came with the Bank's letter of March 13, 2003. Plaintiff's lawsuit was filed approximately seven months later and thus is well within any applicable peremptive period.[4]

Defendants claim that "any and all claims" brought against a trustee are subject to La. R.S. 9:2235 while plaintiff argues that since some of her claims are not brought based upon the beneficiary/trustee relationship this statute does not apply. However, the Court finds that whether this statute or other codal provisions govern the prescriptive/peremptive period of all of plaintiffs' claims is of no matter because plaintiff did not get notice of the failure of the Trust until the March 7, 2003 letter. It is from this point that any peremption period begins to run, and, as stated above, none of plaintiff's claims are barred because suit was filed only seven months later, in September, 2003.

Furthermore, to the extent that plaintiff has claims against defendants that are not brought based upon a beneficiary/trustee relationship, these claims are also within any applicable statute of limitations. Even if "the conduct complained of by the plaintiff [as settlor] is in the nature of a tort, namely, a . . . breach of fiduciary duty," *Fontenot v. First Federal Savings of Opelousas*, 736 So.2d 864, 869 (La.App. 3 Cir. 2/3/99), these claims would be controlled by La.Civ.Code art. 3492 which provides a liberative prescription period of one year "[commencing] from the day the injury or damage is sustained." Id.; *see also, Fontenot*, 736 So.2d at 869. In this case damage was sustained by the plaintiff the moment she knew with *certainty* that the Trust would fail. The letter date March 7, 2003 provided that certainty. Plaintiff had one year from the date of the

---

[4]Besides the March 2003 letter, Defendants have failed to produce any other document that would have disclosed to plaintiff the quickness with which the Trust was being exhausted.

letter to file an action, and she did so within seven months. Thus her claims are neither perempted nor prescribed.

    C.    Limitation of Damages

        1.    The Parties' Positions

Finally, defendants contend that Morse's claims should be limited to her interest as an annuity recipient, and claims on behalf of the Trust and the principal beneficiaries should be dismissed. Defendants argue that plaintiff must have standing to assert her claim. *Fla. Dept. of Ins. v. Chase Bank of Tex.*, 274 F.3d 924, 928-29 (5th Cir.2001); *Thomas v. N.A. Chase Manhattan Bank*, 994 F.2d 236, 242 (5th Cir.1993); *Russell v. Choicepoint Servs. Inc.*, 302 F.Supp.2d 654, 662 (E.D. La.2003). Defendants point to Section 9:2221 of the Louisiana Trust Code, which states a *beneficiary* may institute an action to compel a trustee to redress a breach of trust. La.R.S. 9:2221. This section was adopted from Section 199 of the Restatement (Second) of Trusts cmt. c (1991), and the Comments to the Restatement provide that a settlor cannot maintain an action for alleged breach of trust. *See* Restatement (Second) of Trusts § 200 cmt. b. (1991). Defendants thus argue that the Louisiana Trust Code should not provide the settlor with a right of action against a trustee either.

Relying again on the Restatement, defendants aver that as an annuity recipient plaintiff lacks sufficient interest to seek damages on behalf of the principal beneficiaries. The Restatement provides that a beneficiary can only maintain a suit "to the extent that his interest is affected." Restatement (Second) of Trusts § 214 cmt. b (1959); s*ee also, Wisenur v. Burns*, 44 S.W.3d 289, 295 (Ark.2001). As such defendants urge the court should limit plaintiff's potential

maximum recovery to her actual damages, namely the value of lost annuity payments.

Plaintiff responds that she has a substantial and reasonable expectation of a distribution to her charitable beneficiaries arising from defendants' promises. In support plaintiff cites a law review article which supports the proposition that a grantor has standing to enforce promises made by trustees. *See* Gaubatz, J., *Grantor Enforcement of Trusts: Standing In One Private Law Setting* (N.C.L.Rev. 1984)("Grantor standing based on noneconomic interests has been found to exist in trust enforcement cases whenever the situation suggests violation of substantial reasonable expectations of the grantor arising from the creation of the trust."). Plaintiff contends that while she selected the charitable remainder trust option, she did so because defendants assured her that the economic benefits to herself and her charities would be significantly superior than if she sold the shares outright. Plaintiff avers that if her intent was only to receive $180,000 for 10 years on an initial corpus of 1.5 million she would not have needed defendants help. As such, the benefit to the charities was an integral and indivisible part of the bargain that defendants made with plaintiff, and she should be allowed to recover for defendants' failure to meet their obligations.

Plaintiff also argues that civil and common law principles support her standing to assert all claims. In civil law, a trust is governed by the law of obligations. *See D.J. Hayton, ET al., Principles of European Trust Law* (1990); *see also* La. Civ. Code art. 1981 ("the stipulator, for the benefit of the third party, may demand performance from the promisor"). Plaintiff argues she has standing to sue for breach of obligations to herself and her intended third-party beneficiaries. Plaintiff also asserts that the contractual nature of trusts has long been recognized in American jurisprudence and that defendants breached their fiduciary duties by attempting to

15

bar claims by the charities. *See Noe v. Roussel*, 310 So.2d 806 (La. 1975)("An agent or fiduciary may not take even the slightest advantage . . ."); *see also Matter of Disciplinary Proceedings Against Forester*, 530 N.W.2d FIX CITE (Wis. 1995)(holding that trustees acted improperly when they "went so far as to seek to obtain by litigation results directly adverse to the interests of the beneficiaries of the trusts to which there were trustees.")

2. Holding

The Court finds that plaintiff has no standing to bring an action on behalf of her charitable beneficiaries. In *Lynch v. Porter*, 446 F.2d 552 (5th Cir.1971), the Fifth Circuit held that a claim of a beneficiary who derivatively, on behalf of the trust, sought restoration of funds belonged solely to the beneficiary. *Id.* The Court held that when there is an injury to the *res* of the Trust caused by the trustee, and not by a third party, the claim for breach of trust belongs solely to the beneficiary and not to the trust, and "the action is therefore not derivative." *Id.* at 227. Thus, under *Lynch*, plaintiff cannot bring an action against defendants on behalf of the Trust.

Furthermore, the Second Restatement of Trusts states, *inter alia*:

"Where, however, *the settlor retains an interest in the trust property*, he can of course maintain a suit against the trustee to protect that interest. *Thus if the settlor is also a beneficiary of the trust*, or if he has an interest by way of resulting trust, or is he has reserved power to revoke the trust, *he can maintain a suit against the trustee to protect his interest* . . ." REST 2d TRUSTS § 200, cmt b (1959)(emphasis added).

Here plaintiff is both settlor and income beneficiary. Accordingly, plaintiff is entitled to maintain an action against defendants for her interest as beneficiary *only*. She is not entitled to claim on behalf of the other beneficiaries either in her capacity as settlor or as fellow beneficiary. Additionally, the Court notes that the interests of the charities named in the Trust instrument

16

were previously dismissed with prejudice by the Court at the charities' request. Therefore to allow plaintiff to continue an action on their behalf would not only go against their wishes but would create a situation of unjust enrichment should plaintiff eventually recover on their behalf.

### III.  Conclusion

Accordingly, for the reasons stated above,

**IT IS ORDERED** that the defendants' Motion for Summary Judgment or Alternatively Partial Summary Judgment (Rec. Doc. 70) is hereby **DENIED** in part and **GRANTED** in part.

Specifically, as to plaintiff's claims for breach of trust, breach of fiduciary duty, breach of contract, and detrimental reliance, defendant's Motion for Summary Judgment on these claims is **DENIED**.

Defendant's Motion for Summary Judgment on all claims prior to September 2001 based on peremption is also **DENIED**.

As to limitation of plaintiff's damages, the Court limits plaintiff's claims to those brought on her behalf only. Consequently, defendant's Motion for Summary Judgment regarding any claims brought by plaintiff on behalf of other beneficiaries is **GRANTED**. Those claims brought by plaintiff on behalf of other trust beneficiaries are hereby **DISMISSED WITH PREJUDICE**.

Houma, Louisiana, this 31st day of October, 2005.

_____
STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT COURT JUDGE